### IN THE UNITED STATES DISTRICT COURT FOR
### THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

GREG BELLOMY, an individual,

        Plaintiff,

v.                                                     CIVIL  ACTION  NO.  3:11-0110

UPS/IBT FULL-TIME EMPLOYEE PENSION
PLAN, an Employee Welfare Benefit Plan;
UNITED PARCEL SERVICES, INC., a Ohio
Corporation; and DOES 1 through 35, inclusive,

        Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is the motion by Defendant United Parcel Service, Inc. ("UPS") for summary judgment (ECF No. 58) on Plaintiff's one remaining cause of action against UPS— namely, Plaintiff's cause of action for violation of ERISA § 510. For the reasons stated below, the motion is **GRANTED.**

### Procedural History

Plaintiff Greg Bellomy, a former UPS employee, filed the Complaint in the instant case alleging seven causes of action against UPS, certain Doe Defendants, and the UPS/IBT Full-Time Employee Pension Plan ("UPS/IBT Plan"). All seven causes of action stemmed from UPS terminating Plaintiff's employment.

Plaintiff began working at UPS's Huntington, West Virginia Business Center on August 24, 1984. He initially worked part-time, and later full-time as a Porter and then as a Car Washer. In Plaintiff's last position as a Car Washer, he worked an 8-hour shift from approximately 6:30 p.m. to 3:30 a.m., which included a meal break. UPS management installed a video camera at the Huntington Center in February 2009, after a supervisor complained that an unknown individual took items from a drawer and caused a problem with a computer. Videos recorded shortly after installation allegedly show Plaintiff not working, despite being on the clock and not on a break, on four separate days. Overall, these videos show Plaintiff spending long periods of time in one of the Center's offices engaged in non-work-related activities, such as chatting with other employees and reading non-work materials.[1] UPS measured the amount of falsely billed time as follows: 1) February 23, 2009- 2 hours and 56 minutes; 2) February 24, 2009- 3 hours and 12 minutes; 3) February 25, 2009- 22 minutes; and February 27, 2009- 2 hours and 25 minutes.

UPS terminated Plaintiff's employment on March 4, 2009. UPS stated that his employment was terminated because of Plaintiff's theft of company time, a violation of UPS's "Honesty in Employment" Policy. Plaintiff was a member of the International Brotherhood of Teamsters, Local Union 505 during his employment at UPS. Following his discharge, Plaintiff filed a grievance pursuant to his union's labor agreement, which was later denied by a panel of the Atlantic Area Parcel Grievance Committee.

Plaintiff would have been eligible to receive a service pension under the UPS/IBT Plan once he accrued 25 years of Combined Service Credit. He would have been eligible for this "Twenty-Five and Out Pension" on February 1, 2010, approximately 11 months after his

_____

[1] Plaintiff alleges that some of his time spent in the office during the hours in question was work-related, such as completing a safety test on the computer. However, it is undisputed that at least some portions show Plaintiff engaged in activities for which no work-related explanation is offered.

termination. This pension would provide him with benefits until he reached the age for collection of other retirement benefits. Plaintiff's second cause of action from his Complaint—the only remaining claim against UPS[2]—alleges that Plaintiff's termination violated § 510 of the Employee Retirement Income Security Act ("ERISA"), codified at 29 U.S.C. § 1140, which prohibits termination for the purpose of interfering with an employee's collection of benefits, and that Plaintiff is therefore entitled to the value of benefits that he would have collected under the Twenty-Five and Out Pension. Plaintiff claims that UPS management terminated his employment in order to prevent Plaintiff from being able to attain 25 years of service and thereby collect benefits through the Twenty-Five and Out Pension. Specifically, Plaintiff believes that a UPS manager was upset that Plaintiff could retire and collect a pension sooner than the manager himself could, and that management engaged in a plan to monitor Plaintiff and find a reason to terminate his employment. Defendant UPS counters that the company has a strict, neutrally-applied policy of terminating employees for theft of time, regardless of their length of service; that the video camera was placed in the office for a reason unrelated to Plaintiff; that those responsible for his termination were not aware of Plaintiff's impending plans to retire; and that UPS saved no money by terminating Plaintiff's employment when it did.

UPS filed the instant Motion for Summary Judgment on July 9, 2012, requesting the Court to rule in its favor on the only cause of action still outstanding against UPS. Plaintiff responds that summary judgment is not appropriate at this point because Plaintiff can raise a material issue of fact as to the cause of action.

---

[2] The other six causes of action were dismissed as to UPS or in their entirety through: the Notice of Voluntary Dismissal, ECF No. 11; the Stipulation of Dismissal, ECF No. 16; and an order of this Court, ECF No. 57.

## Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Furthermore "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of [an individual's] testimony is correct." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984), *superseded by statute on other grounds, as explained in Hayes v. GGP-Four Seasons, L.L.C.*, No. 1:10CV423 & 425, 2011 U.S. Dist. LEXIS 41804 (M.D.N.C. Apr. 18, 2011); *see also Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 976 (4th Cir. 1990).

ERISA § 510, codified at 29 U.S.C. § 1140, prohibits termination for the purpose of interfering with an employee's collection of benefits, and states in pertinent part as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

To determine if a violation of § 510 has occurred, the Court must apply the test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Conkwright v. Westinghouse Electric Corp.*, 933 F.2d 231, 239 (4th Cir. 1991). Under the *McDonnell Douglas* test, the plaintiff establishes a prima facie case under ERISA by showing, by a preponderance of the evidence, that: 1) he was a member of the protected class (here, that Plaintiff otherwise qualified for the Twenty-Five and Out Pension); 2) he was qualified for the position he held; and 3) he was terminated "under circumstances that give rise to an inference of discrimination." *See Henson v. Liggett Group, Inc.*, 61 F.3d 270, 277 (4th Cir. 1995) (quoting *Dister v. Continental Group Inc.*, 859 F.2d 1108 (2d Cir. 1988)). Furthermore, the plaintiff "must prove a specific intent of the employer to interfere with an employee's pension rights." *Conkwright*, 933 F.2d at 239; *Henson*, 61 F.3d at 277. The plaintiff must demonstrate that this intent on the part of the employer was merely a motivating factor in the employer's decision to terminate the employee, and need not show it was the sole factor. *Humes v. McDonnell Douglas Corp.*, 922 F. Supp. 229, 233 (E.D. Mo. 1996).

The plaintiff's establishment of a prima facie case, however, does not end the Court's inquiry:

> Establishing a prima facie case raises only an inference of discrimination. The defendant can then offer legitimate nondiscriminatory explanations for the allegedly discriminatory acts. The employer is not required to prove the absence of a discriminatory motive because the burden is one of production, not persuasion. The plaintiff must then bear the "ultimate burden of persuasion" and

show by a preponderance of the evidence that the defendant's explanations are pretextual or otherwise unworthy of credence.

*Henson*, 61 F.3d at 274-75 (citations omitted).

## Analysis

After drawing permissible inferences in the light most favorable to Plaintiff, as the nonmoving party, the Court finds that a genuine issue of material fact does not exist, and finds in favor of Defendant UPS on this cause of action.

Even if Plaintiff has succeeded in showing that the circumstances of his discharge create an inference of discrimination and therefore that he passes the first part of the *McDonnell Douglas* framework—an issue which the Court does not and need not decide[3]—Defendant UPS has established a legitimate, nondiscriminatory reason for Plaintiff's discharge: his several hours spent non-working while on the clock. Therefore, the Court must determine whether there is a genuine issue of material fact concerning the possible pretext of UPS's explanation. *See Conkwright*, 933 F.2d at 235 ("Conkwright has failed to create a genuine issue as to whether his firing was 'more probably than not' due to age discrimination. Accordingly, the granting of summary judgment on the ADEA claim is affirmed."); *Henson*, 61 F.3d at 276 ("Although Henson concedes that these are legitimate nondiscriminatory reasons, she nevertheless, asserts that a genuine factual dispute exists over these reasons. We, therefore, move to the final stage of our analysis. Considering all of the evidence in the record, we must determine whether Henson has met her ultimate burden of proving that she was intentionally discriminated against because of her age.").

---

[3] *See Henson*, 61 F.3d at 275 ("Assuming, without deciding, that Henson has stated a *prima facie* case of age discrimination, the burden shifts to [employer] Liggett to produce a legitimate, nondiscriminatory reason for its actions.").

Plaintiff claims that UPS saved money by terminating his employment before he was eligible to collect under the Twenty-Five and Out Pension. The Fourth Circuit has held that monetary savings alone is insufficient to show pretext. *Conkwright*, 933 F.2d at 239 (affirming summary judgment in favor of former employer, where the plaintiff claimed that he was fired because of his age). Plaintiff also suggests that the short amount of time between termination and when his benefits would have vested—eleven months—indicates the pretextual nature of UPS's decision. However, it is not true that "savings and proximity [of discharge to accrual date of benefits] will always be enough to entitle plaintiff to a trial on this type of claim." *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1044 (6th Cir. 1992) (affirming summary judgment in favor of employer concerning employee's ERISA discharge claim, because although employee was discharged just two months before his benefits accrued, his discharge occurred in close proximity to the sale of the mine at which he worked).

Plaintiff does not merely allege cost savings and proximity in support of his claim, but additionally alleges that manager Kevin Wooten was upset that Plaintiff could take an earlier retirement than Mr. Wooten could. Plaintiff's belief is based on a conversation with Mr. Wooten, in autumn 2008, during which Plaintiff told the manager of his plans to retire, and Mr. Wooten, surprised that Plaintiff could retire after 25 years of service, stated something to the effect of "I will have to see about this." *Gregory Bellomy Aff., Pl's Resp., Ex. C, ¶ 11*, ECF No. 61. Plaintiff further claims that afterwards Mr. Wooten, in conjunction with management, tried to monitor Plaintiff's behavior in order to get him fired, treating him more harshly than other employees. UPS denies that personal animosity factored into the decision to terminate Plaintiff.

After drawing inferences in the light most favorable to Plaintiff, and without determining the truthfulness of these competing explanations, the Court finds that there is no genuine issue of

material fact regarding the circumstances of his termination. To survive on summary judgment, "a nonmoving party's supporting affidavits [must] be based on personal knowledge and set forth facts that would be admissible in evidence at a trial. Therefore, statements based solely on information and belief do not satisfy the requirements of Rule 56." *Cottom v. Town of Seven Devils*, 30 Fed. App'x 230, 234 (4th Cir. 2002) (affirming summary judgment against plaintiff resort owners where their affidavits alleging unreasonable police conduct were purely based on information and belief). Mere statements of a "conclusory fashion" do not suffice to create a genuine issue of material fact without something more to support those conclusions. *See id.*

While Plaintiff claims that management intentionally sought to find other reasons for firing him, though the real reason was his pending retirement, he does not present any evidence in support of this which is based on personal knowledge, other than the single conversation with Mr. Wooten. The affidavits of Plaintiff and his coworker Steve Day, which both allege improper reasons for Plaintiff's termination, state that the affiants "have personal knowledge of the matters set forth below, except insofar as such information is provided upon information and belief." *Bellomy Aff., ¶ 1*; *Steve Day Aff., Pl's Resp., Ex. D, ¶ 1*, ECF No. 61. Mr. Day further states that he has "knowledge of events leading up to and following the discharge." *Day Aff., ¶ 4.* However, neither Plaintiff nor Mr. Day has in actuality shown any personal knowledge or presented other evidence supporting Plaintiff's allegations that: 1) Plaintiff's employment was terminated by other UPS employees at the request of Mr. Wooten, 2) the individuals who terminated Plaintiff's employment were actually aware of Plaintiff's length of service and plans to retire, 3) the cameras were installed in order to monitor Plaintiff specifically, and 4) there was a plan to unfairly target Plaintiff. Plaintiff's Response indicates that he will testify that UPS decided to terminate him before installing the cameras, but again, no basis for this allegation is presented. In

fact, in his deposition, Plaintiff stated that he had no knowledge whether Wooten was behind the camera installation or Plaintiff's termination. *Bellomy Dep. at 147, Def's Reply, Ex. AA*, ECF No. 63. The only real evidence on this claim is the conversation between Mr. Wooten and Plaintiff, which occurred several months before Plaintiff's discharge. The Court believes that this "scintilla of evidence" is not sufficient for a reasonable juror to find that UPS's explanation was a pretext.

None of the other evidence offered in conjunction with this explanation creates a genuine issue of material fact. For example, Plaintiff points out that UPS sent two letters to Workforce West Virginia explaining the reasons for Plaintiff's termination; one letter stated that he was discharged for falsification, and another stated that he was discharged for reading newspapers and magazines on the clock. Plaintiff claims that these conflicting explanations are indicative of a discriminatory purpose behind the termination. The Court, however, finds no merit to this argument, and finds that the two letters are not contradictory, but rather together create a clear picture of why Plaintiff was fired. The letters to Workforce West Virginia therefore do nothing to create a triable issue of material fact.

Additionally, Plaintiff points out that around the time that he was discharged, another employee was also fired after being caught on video not working while on the clock. While a grievance panel independent from UPS upheld Plaintiff's termination, a panel eventually gave this other employee—whose eligibility for retirement was much further away—a suspension instead. This evidence does not create a genuine issue of material fact because the grievance panel did not make the decision to fire either employee in the first place; it merely reviews the terminations afterwards. Furthermore, this other employee claimed that he made up the time another day, and he was caught on video only one day as compared to the Plaintiff's four days.

9

While the reasoning behind the panel's decision in regards to this other employee is unknown, the differences between the two employees would be sufficient to justify the dissimilar outcomes. That Plaintiff's termination was affirmed and another employee's was not therefore does not create a genuine issue of material fact, even when considered together with the Wooten conversation.

There is no question of fact that Plaintiff appears on the videos, and that he cannot provide work-related explanations for all of his behavior. There is also no question that Plaintiff's behavior was a terminable offense under UPS policy and that the discharge occurred immediately after the videos were made. Plaintiff stated that he was "shocked" by the videos, *Bellomy Dep. at 105, Def's Mot. For Summ. J., Ex. A*, ECF No. 60, and suggested that his bipolar disorder may be to blame for his inactivity on the videos. Plaintiff included a letter and information from his doctor as part of his initial Rule 26(a)(2) disclosures, and indicated that the doctor could be a possible expert witness. While the Court is sympathetic to the possibility that Plaintiff's bipolar disorder and related medication issues could provide an explanation for his behavior, this explanation does not change the fact that he did not work for many hours while on the clock, as shown on the tapes, and that his conduct was grounds for termination. Therefore, after consideration of the evidence, the Court finds that a genuine issue of material fact does not exist, and that summary judgment should be granted in favor of Defendant UPS.

## Conclusion

For the reasons stated above, the motion by Defendant UPS for summary judgment on Plaintiff's one remaining cause of action against UPS (ECF No. 58) is **GRANTED.**

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: November 16, 2012

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE